**HON. ROSANNA MALOUF PETERSON**

James E. Baker
Jerry Moberg & Associates, P.S.
P.O. Box 130 – 124 3rd Avenue S.W.
Ephrata, WA 98823
jbaker@jmlawps.com
Phone: (509) 754-2356
Fax: (509) 754-4202
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE QUEZADA, | No. 2:18-cv-00118-RMP |
| Plaintiff, | **DEFENDANTS' STATEMENT OF SPECIFIC FACTS** |
| v. | |
| CITY OF ENTIAT and SUSAN DRIVER, individually, | **Hearing Date: 2:30 p.m. Aug. 17, 2018** |
| Defendants. | **With Oral Argument** |

PURSUANT to LR 56.1, Defendants City of Entiat and Susan Driver submit Defendants' Statement of Specific Facts (D-SSF) relied upon in support of Defendants' motion for summary judgment.

DATED this 8th day of June, 2018.

JERRY MOBERG & ASSOCIATES, P.S.

*s/ James E. Baker*
JAMES E. BAKER, WSBA No. 9459
JERRY MOBERG & ASSOCIATES, P.S.
P.O. Box 130 – 124 3rd Avenue S.W.
Ephrata, WA 98823
jbaker@jmlawps.com

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 1 of 24

Phone: (509) 754-2356
Fax: (509) 754-4202
Attorneys for Defendants

## DOCUMENTS SUPPORTING STATEMENT OF SPECIFIC FACTS

1.    Declaration of Susan Driver, together with:

Exhibit A – Letter dated Feb. 10, 2015 from Mayor Vradenburg to Plaintiff.

Exhibit B – City of Entiat's personnel policies.

Exhibit C – Preliminary internal evaluation of Plaintiff.

Exhibit D – Memos from Ms. Driver to the City Council and the City's staff.

Exhibit E – Minutes dated Aug. 13, 2015 of the Entiat City Council.

Exhibit F – Letter dated Sept. 15, 2015 from Ms. Driver to Plaintiff's lawyer.

2.    Plaintiff's responses to defendants' second interrogatories to Plaintiff.

Cover page and responses to interrogatories ## 1-3.

3.    Transcript of the deposition of Plaintiff.

Cover page and pp. 17, 18, 19, 20, 21, 25, 26, 27, 41 and 44-47.

4.    Transcript of the deposition of Mayor Vradenburg.

Cover page and pp. 9, 10, 12, 17, 18, 20-25, 32, 33, 36 and 40.

## STATEMENT OF SPECIFIC FACTS

## TAB 1 – DECLARATION OF DEFENDANT SUSAN DRIVER

1.    Ms. Driver is the former City Administrator/Planner for the City of Entiat.  (Decl. of Ms. Driver ¶ 1.)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 2 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✦124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

2.     When Ms. Driver accepted her position, she was aware that the City was involved in a fraud audit.  She was not aware of other issues at the City until she started working at the office on a daily basis in January 2015.  (*Id.* ¶ 2.)

3.     Ms. Driver was informed that Mike Herdt, the relatively new Public Works Director, had decided to change the way that Entiat Park (leased from the Chelan County PUD) would be managed.  Because the City was already short one Public Works employee, it was decided to hire a Park Supervisor to manage Entiat Park so that the Public Works Director would be free to work on projects in the broader city with the rest of the Public Works crew.  (*Id.*)

4.     The position of Park Supervisor had already been approved the City Council in the previous year's budget hearing.  Mr. Herdt indicated that the Park Supervisor would be a regular Public Works employee in the off-season, would train for water and sewer certification and would work a different schedule during the summer to cover weekends in the park so that he, as Public Works Director, would not have to be available on weekends.  (*Id.*)

5.     The City planned to hire up to five part-time seasonal workers to maintain park operations during the summer camping season under the direction of the Park Supervisor.  This differed significantly from past years when the City had a couple to live in the park as Park Hosts.  (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 3 of 24

6.    The Park Hosts were responsible for managing the park under the supervision of the Public Works Director.  The Park Hosts cleaned bathrooms, emptied garbage cans, helped campers to register and provided general support to guests.  The regular Public Works crew assisted with major maintenance issues such as mowing, watering and repairs.  Seasonal help was sometimes brought in to assist with landscaping and grounds-keeping city-wide. (*Id.*)

7.    Because the Park Supervisor position was a new and untested position, Mayor Keith Vradenburg set a six month probationary period rather than the usual three-month probationary period.  The offer letter signed by Plaintiff reflects this six-month probationary period. (*Id.* ¶ 3.)

8.    Plaintiff began his employment as Park Supervisor with the City on March 2, 2015. Plaintiff's six-month probationary period ended on Sept. 2, 2015. (*Id.* ¶ 4.)

9.    Plaintiff's Park Supervisor position was eliminated as of Aug. 31, 2015.  Plaintiff's job was not eliminated because of his race or national origin. (*Id.* ¶ 5.)

10.    By letter dated Feb. 10, 2015, Mayor Vradenburg notified Plaintiff (and Plaintiff signed the letter) that his official start date would be March 2, 2015. The letter further stated: "Starting wage for this position would be $3000/month . . .

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 4 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

and satisfactory performance during the initial six month probationary period." (*Id.* ¶ 6.) (A copy of the letter is attached as **Exhibit A** to Ms. Driver's declaration.)

11. Plaintiff was provided with a copy of the City's personnel policies. (*Id.* ¶ 7.) (A copy of the City's personnel policies, signed by Plaintiff, is attached as **Exhibit B** to Ms. Driver's declaration.) Employees of the City were expected to comply with all provisions of the City's personnel policies. Plaintiff signed for receipt of the City's personnel policies on March 7, 2015. The City's personnel policies were last revised on April 11, 2013. (*Id.*)

12. Ms. Driver was present with Plaintiff, Mayor Vradenburg, Public Works Director Mike Herdt and former City Council member Bill Haven during Plaintiff's job interview. During the interview it was made clear to Plaintiff that the position of Park Supervisor was a newly created position and the City would need the successful candidate for the job to operate as a regular Public Works Department staff person during the off-season. It was explained to Plaintiff that the person hired for the Parks Supervisor position would be expected to train in water and sewer treatment and incremental increases in pay would be provided as certification was obtained. (*Id.* ¶ 8.)

13. Ms. Driver received complaints from staff members about Plaintiff. Ms. Driver was informed that Plaintiff was rude and disrespectful to the other two Public Works employees. Ms. Driver was told that Plaintiff refused to learn how to

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 5 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧ 124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

maintain the new irrigation system in the park and asserted that because he was the supervisor he would not need to do that type of work.  Ms. Driver was told by Public Works employees that Plaintiff tried to treat them as his subordinates even though they were not park employees and had seniority.  (*Id.* ¶ 9.)

14.     During April 2015, Ms. Driver received reports that Plaintiff was on the phone and texting much of the time when he was supposed to be working for the City.  The biggest concern was that Plaintiff was seen using his cell phone while driving a City vehicle.  Ms. Driver called Plaintiff and asked him about it.  Plaintiff told Ms. Driver that he had never done so and that he would not lie to me. (*Id.* ¶ 10.)

15.     Ms. Driver reminded Plaintiff that the City is a small town and people talk and that the public was closely watching the conduct of City employees. At this time the City was undergoing a fraud audit related to the theft of tens of thousands of dollars by a City employee.  Ms. Driver advised Plaintiff that the City was aware of Plaintiff's previous reckless driving conviction and she advised Plaintiff that poor driving habits (including talking and/or texting on his cell phone while driving) would be grounds for termination.  (*Id.*)

16.     Just before Entiat Park opened for the 2015 season, the Chelan County PUD requested the hiring of a Park Host by the City.  The Park Host position had been eliminated when the Park Supervisor position was created.  Ms. Driver had to

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 6 of 24

go to the City Council to get the Park Host position approved and funded.  (*Id.* ¶ 11.)

17.    There was a meeting to clarify the responsibilities of the Park Host and Plaintiff as Park Supervisor.  Mayor Vradenburg told those attending what he expected from them.  Mayor Vradenburg told Plaintiff that he expected him, as Park Supervisor, to be in the park every weekend. (*Id.* ¶ 12.)

18.    After the meeting, Plaintiff complained to Mayor Vradenburg about being required to work on Saturdays and Sundays.  Eventually, an agreement was made for Plaintiff to work in the park on Fridays and Saturdays but not on Sundays. (Ms. Driver was told that Plaintiff was still working on-call at Alcoa and that most of that work was on weekends.)  The Public Works Director ended up working Sundays in the park after all.  (*Id.*)

19.    As the summer progressed Ms. Driver began to receive more complaints about Plaintiff.  Members of the office staff who handled park reservations told Ms. Driver that they were having trouble getting in touch with Plaintiff to respond to questions and needs of guests at the park.  (The City paid a portion of Plaintiff's cell phone bill so that the office staff could contact him about City business.)  Ms. Driver was advised that Plaintiff would sometimes be unavailable for hours at a time while he was supposed to be working for the City.

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 7 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

Sometimes the office staff would send someone from the Public Works staff to look for Plaintiff. (*Id.* ¶ 13.)

20. There were times when they would drive around town without locating Plaintiff. One member of the Public Works staff told Ms. Driver after one of these disappearances that he asked Plaintiff where he had been and that Plaintiff responded: "None of your f***ing business." (*Id.*)

21. During early May 2015 Ms. Driver had a discussion with Plaintiff and Clerk/Treasurer Linda Countryman concerning Plaintiff's timesheet and hours worked. Plaintiff had taken off a couple of Fridays – days that he was specifically required to work at the park. Ms. Countryman asked Ms. Driver what should be done about payroll. It was a day that Plaintiff was scheduled to work so Ms. Driver called him. There was no answer. Ms. Driver went out looking for Plaintiff but could not find him. (*Id.* ¶ 14.)

22. Ms. Driver found Mr. Herdt and asked him where Plaintiff was. Mr. Herdt told Ms. Driver that he did not know. Ms. Driver asked Mr. Herdt about Plaintiff's timesheets and he said he had not given approval for Plaintiff to be absent on the previous Friday. Ms. Driver told Mr. Herdt that she needed to speak with Plaintiff because we were holding up payroll. Mr. Herdt called later to say that he forgot that he had given Plaintiff approval to be gone the previous Friday and that the correct hours needed to be set forth on Plaintiff's timesheet. (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 8 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA 98823
(509) 754-2356 / Fax (509) 754-4202

23.    Mr. Herdt sent Plaintiff to speak with Ms. Driver and Ms. Countryman. Plaintiff was very defensive.   Ms. Driver and Ms. Countryman explained the vacation policy to him again (although Plaintiff had been given the City's personnel policies) and advised him that time off needed to be pre-approved by his supervisor. Ms. Driver reiterated that Mayor Vradenburg had specifically told Plaintiff that he needed to be in the park on Fridays and Saturdays.  (*Id.* ¶ 15.)

24.    Ms. Driver advised Plaintiff that any absences (per the policy manual) needed to be pre-approved by his supervisor in writing and if he missed another day without pre-approval that he would be discharged from employment. (*Id.*)

25.    A preliminary internal evaluation was conducted of Plaintiff on June 12, 2015. (*Id.* ¶ 16.)  (A copy of the evaluation is attached as **Exhibit C** to Ms. Driver's declaration.) As to position knowledge, the evaluation stated: "Must learn to operate & repair irrigation system."  As to the quality of work, the evaluation stated: "Too many distractions."  As to initiative, the evaluation stated: "Appears to do only what he is told & no more."  As to cooperation, the evaluation stated: "Other employees have complained of his unwillingness to do the unpleasant jobs & bad attitude."  As to dependability, the evaluation stated: "Appears to spend an inordinate amount of time on personal phone calls & texts."  As to teamwork, the evaluation stated: "[O]thers have quoted him as saying, 'I don't have to do that, I'm the supervisor.'"  As to training completed since last evaluation, the evaluation

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 9 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧ 124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

stated: "Has not entered into ANY additional training." As to recommendation, the evaluation stated: "This individual needs further assessment before being taken off of probationary period. Recommend an additional 3 months." The recommendation further stated: "Seems to be highly distracted. Has trouble following directions & understanding City policies. Breakage record for 3 months is unbelievable." (*Id.*)

26. During an out of state vacation of the Public Works Director, it was made clear to Ms. Driver that the City had no one else on staff with the State-required water certification. This left the City in a position of liability. Ms. Driver immediately began preparing a formal proposal to the City Council to rectify the situation as quickly as possible. Ms. Driver prepared a formal proposal to the City Council to reorganize the Public Works Department. (*Id.* ¶ 17.)

27. The first phase of the reorganization involved park staffing. The proposal recommended eliminating the Park Supervisor position and going back to the previous strategy of using a Park Host couple. The proposal also recommended putting the regular Public Works staff on staggered schedules during the summer to make sure the park was staffed during weekends. Ms. Driver recommended using the salary funds from the parks positions to hire a new all-around Public Works employee who already had the necessary water certification. (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 10 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

28.    Ms. Driver discussed the proposal with the Mayor and the Public Works Director.    They each approved of Ms. Driver's proposal.    Following a presentation and discussion at a City Council meeting there was a staff meeting about the proposal and staff members received a memo about the proposal.  (*Id.*)

29.    The elimination of the Park Supervisor position was part of a broader reorganization of the Public Works Department.    The reorganization and the reasoning behind it were contained in two memos: one to the City Council and one to the staff.   (*Id.* ¶ 18.) (The memos are attached as **Exhibit D** to Ms. Driver's declaration.)

30.    Ms. Driver's memo to the City Council dated Aug. 13, 2015 stated in part:

> When the "new" park opened, we tried a new approach.  Originally, the plan was to have a park supervisor and several temporary park staff to work staggered shifts in order to cover the park until 10:00 p.m. every day, especially on weekends. No park host was proposed in this new scheme.  At the request of the Park Board and the PUD, a park host was hired. This led to a lot of overlap in responsibilities.  The current park host does collect funds and greet campers, but does not clean bathrooms or empty garbage cans – the four temporary staff people do those jobs, under the direction of the Park Supervisor or Public Works Director. On Sunday, there are two part-time staffers and no supervisor.  Neither temporary staff, nor the Park Supervisor work in the evenings. This leaves the Park Host to deal with any issues that arise after hours.

> **Discussion:**

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 11 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

In talking with regular staff, it is largely believed that the regular staff could manage the park maintenance like they always did, if they were at the staffing level they had before (four people) if we had a similar Park Host arrangement. . . . We have looked a lot at the staffing needs for the park in the past year, and not addressed the general Public Works staffing needs for the entire city. What we are neglecting to see is a huge hole coming up. As of the date of this memo, we have only one person on staff with water certification, the Public Works Director. He also has Level 2 sewer certification.  We do have one other person who has Level 1 sewer certification and is working on Level 2, but if anything happened to Mike [Herdt], we would be in a really bad spot. . . . As City Administrator, I am proposing that we eliminate the Park Supervisor position at the end of the six month probationary period. I am also proposing that we close out the temporary park staff and Park Host work schedules after the Labor Day holiday (effective September 8, 2015). I further recommend that we advertise for a full-time, year-round maintenance person. Complete water certification should be a requirement to apply for this position so we can fill the gap. . . . For park management next year, I recommend bringing back the old Park Host model and staggering all public work schedules so that we have coverage on weekends from at least one full-time staff person The weekends could be split so that no one position needs to cover the entire summer.

(*Id.* ¶ 19.) (Paragraphing omitted.)

31.    On Aug. 13, 2015, the City eliminated the Park Supervisor position, effective Aug. 31, 2015. (*Id.* ¶ 19.)  (A copy of the minutes of the City Council is attached as **Exhibit E** to Ms. Driver's declaration.)

32.    Plaintiff's job ended on Aug. 31, 2015, which was the end of his probationary period.   By letter dated Sept. 15, 2015, Ms. Driver provided information to Plaintiff's attorney. (*Id.* ¶ 20.)  (A copy of Ms. Driver's letter is attached as **Exhibit F** to Ms. Driver's declaration.)  Ms. Driver's letter stated:

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 12 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

In essence, over the summer it became apparent that the City was inefficiently staffed in Parks, and understaffed in Public Works. It was recommended that the Parks Supervisor position be eliminated effective August 31, 2015 and that the City start the process of hiring a full time public works maintenance person with water certification. The Mayor agreed and the council was informed of this proposed change at the August 15, 2015 council meeting. Consistent with this plan, Mr. Quezada was informed that his position of Parks Supervisor was being eliminated as of August 31, 2015.

(*Id.*)

33.    Ms. Driver stated that never in her life, either personally or professionally, has she discriminated against any person due to their race, culture, skin color, religion, sexual orientation or any other personal characteristic. Ms. Driver stated that she is a strong believer that prejudice of any kind is harmful and should not be tolerated. Ms. Driver considers it to be defamation of character to be accused of racial discrimination. (*Id.* ¶ 21.)

34.    At no time during Ms. Driver's employment with the City did she hear any employee or elected official of the City refer to Plaintiff's race in a negative manner. (*Id.* ¶ 22.)

**TAB 2 – PLAINTIFF'S RESPONSES TO DEFENDANTS' SECOND INTERROGATORIES TO PLAINTIFF**

35.    Plaintiff was asked in an interrogatory to set forth facts supporting his contention that Ms. Driver had a racial animus against him. Plaintiff stated:

Susan Driver made derogatory comments to other employees that Keith Vradenburg wasn't happy with me. Susan told Carol McLester,

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 13 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

"I don't like Jose one bit; I will have to find a way to fire him."  Also, when I applied for the position, Susan indicated that she did not think I was capable of writing my cover letter.

(Plaintiff's response to Interrogatory No. 1.)

36.    Plaintiff was asked in an interrogatory to set forth facts to support his claim that the City enticed him to leave his past job and not seek other employment with the promise and incentive that he would remain employed by the City and receive a promotion.  Plaintiff responded:

Michael Herdt, Public Works Director, reached out to me in November 2014 and asked me to apply and informed me I would do training to groom me for Public Works Director position.

(Plaintiff's response to Interrogatory No. 2.)

37.    Plaintiff was asked in an interrogatory to set forth facts to support his claim that the City enticed him to remain on the job and not seek other employment with the promise and incentive that he would remain employed by the City and receive a promotion.  Plaintiff responded:

Michael Herdt called me in November 2014 and told me about getting Parks Super job and asked me to apply for the Public Works Director position. Herdt also indicated that they would have me go to get certifications in water.

(Plaintiff's response to Interrogatory No. 3.)

**TAB 3 – TRANSCRIPT OF THE DEPOSITION OF PLAINTIFF**

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 14 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

38. Plaintiff stated that Ms. Driver, Mayor Vradenburg and Public Works Director Mike Herdt discriminated against him because of his Hispanic race. (Depo. of Plaintiff at 17.)

39. Plaintiff stated that his only reason for alleging that Mr. Herdt discriminated against him was because "he supported [Ms. Driver's] decision." (*Id.* at 18.)

40. Plaintiff stated that his only reason for alleging that Mayor Vradenburg discriminated against him was because he "supported Susan Driver's position." (*Id.*)

41. Plaintiff testified why he alleges that Ms. Driver discriminated against him:

Q.    Now, what leads you to believe that Susan Driver discriminated against you on the basis of race?

A.    She singled me out. I don't think I got the same treatment other guys did.

Q.    Anything else?

A.    I just believe she was unfair.

Q.    Anything else?

A.    Nothing that comes to mind.

Q.    So how did she single you out?

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

A.    She would go out of her way to find out what I was doing and made accusations that weren't true.

Q.    How did she go out of her way to see what you were doing?

A.    She would drive around the park, talk to other employees.

. . .

Q.    Go ahead.  Anything else?

A.    No.

Q.    What accusations did she make that were not true?

A.    I wasn't doing my job, the mayor wasn't happy with my performance. And when I talked to Keith he said otherwise.

Q.    Anything else?

A.    I think that kind of goes hand in hand. And she also talked to Mike about my performance and said she wasn't happy.

Q.    Okay.  And what specifically did she say about you not doing your job?

A.    I wasn't at the park when I was supposed to be, things weren't getting done.

Q.    Okay.  But you say she accused you of something that was untrue and included not doing your job.  What specifically did she say?

A.    I wasn't meeting my duties down at the park. And my duties, I mean, they're broad.

Q.    And who did she tell that to?

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 16 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

A.    She actually told that to the park host at the time.

Q.    Who else did she tell that to?

A.    I don't know.

. . .

Q.    Do you have any other information about Susan Driver saying you weren't doing your job?

A.    No.

Q.    Okay. And you say that she told you that the mayor was not happy about something?

A.    Yes.

Q.    Tell me what she told you.

A.    She said that . . . Keith wasn't happy because I was leaving the park without telling anyone, which wasn't true; that I was taking time off, leaving in the middle of my shift and not letting anyone know, and if it happened again I would be fired.

Q.    Okay.  Anything else?  Any other examples of the mayor not being happy?

A.    Nothing that came directly from him.  Just what I heard from her.

Q.    Okay.  You heard from her that the mayor was not happy about something about your work?

A.    My performance, yes.

Q.    And then you say you spoke to the mayor. And he said what?

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 17 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

A.    He said he was completely . . . oblivious to the – to the matter. He had no idea that was really even going on.  And he actually said otherwise.  He was like "I have never had so much positive feedback. And kudos to you.  You're doing a good job. If I ever have a problem with you, I'll come and talk to you."

(*Id.* at 18-21.)

42.    Plaintiff testified why he concluded that Ms. Driver was unfair to him:

Because . . . she threatened to fire me because I was using my phone. Well, that's common practice at the City of Entiat.  Everyone uses their phone. . . . And no one else got that same threat. . . . She threatened to fire me for leaving the park unauthorized.  I was the park supervisor down there, and whenever I left it was pre-arranged. And she told me that if I ever left the park again without permission she would fire me on the spot. My reply to her was "I've never left the park without your permission. If I have a family emergency, I'm gonna leave the park and then explain later." But that was never the case.

(*Id.* at 26.)

43.    Plaintiff testified that he did not claim that he never missed any time working at the park.  (*Id.*)

44.    Plaintiff was asked whether Ms. Driver did anything else that was unfair to him and he responded: "I can't think of anything off the top of my head." (*Id.* at 27.)

45.    Plaintiff testified that the only two instances that he could think of about Ms. Driver being unfair to him were her saying that she could possibly fire him for using his cell phone and that she could possibly fire him if he left the park without permission.  (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 18 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

46.    Plaintiff was asked for any other facts that would suggest that Ms. Driver discriminated against him on the basis of his race and he responded: "Nothing I can think of."  (*Id.*)

47.    Plaintiff later testified that an example of racial discrimination by Ms. Driver was when she asked him whether he actually wrote the cover letter for his job application "almost like she didn't feel like I was competent enough to write a good cover letter." (*Id.* at 41.)

48.    Plaintiff testified that the issue about cell phone use only involved cell phone use while driving.  (*Id.* at 30.)

49.    Plaintiff testified that he was required to obtain prior authorization from Mr. Herdt, his direct supervisor, if he was not going to be at work during a weekend.  (*Id.* at 33, 38.)

50.    When asked whether he was ever subjected to racial slurs, Plaintiff testified: "I feel like I'm kind of thick-skinned, so I don't take things real personal. . . . I mean, there was some stuff said about Mexicans, but, I mean, it . . . was just in conversation" and it was not anything that he took personal.  (*Id.* at 41.)

51.    Plaintiff was asked about his understanding when he was hired about the circumstances for which he could be let go and he responded: "Nothing was said, but it goes without saying if you don't perform, if you don't do the job that they're asking you to do, you get let go." (*Id.* at 44.)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 19 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

52.    Plaintiff testified that he did not have any other understanding as to how he might be let go.  (*Id.*)

53.    Plaintiff testified that he was working for Alcoa when Mike Herdt called him and told him that a Park Supervisor job was going to be created if it got funding.  (*Id.* at 45.)

54.    Plaintiff testified that he learned about the job from Mr. Herdt or from a newspaper ad.  (*Id.* at 47.)

55.    Plaintiff testified that he does not claim that the City could not reorganize its workforce or could not eliminate a position.  (*Id.* at 50.)

**TAB 4 – TRANSCRIPT OF THE DEPOSITION OF MAYOR VRADENBURG**

56.    Mayor Vradenburg testified that the City created the new position of Park Supervisor and after interviewing several candidates the City hired Plaintiff for the position.  (Depo. of Mayor Vradenburg at 9.)

57.    Mayor Vradenburg testified that Ms. Driver was the ultimate decision maker to hire Plaintiff.  (*Id.* at 10.)

58.    Mayor Vradenburg testified that the hiring of Plaintiff was based upon him getting water and sewer certifications. (*Id.* at 12.)

59.    Mayor Vradenburg testified that he was not personally aware of any performance issues of Plaintiff while he worked for the City.  (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 20 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✥ 124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

60.    Mayor Vradenburg testified that Ms. Driver did not speak to him about terminating Plaintiff's employment but they talked about eliminating the Park Supervisor position.  (*Id.* at 17.)

61.    Mayor Vradenburg testified that the City no longer has a Park Supervisor position.  (*Id.* at 18.)

62.    Mayor Vradenburg testified that the Park Supervisor position was eliminated because of costs and the staff could handle in-house.  (*Id.*)

63.    Mayor Vradenburg testified that the decision to eliminate the Park Supervisor position was made by himself, Mike Herdt and Ms. Driver.  (*Id.*)

64.    Mayor Vradenburg testified that the Park Supervisor position was eliminated as part of a reorganization. (*Id.*)

65.    Mayor Vradenburg testified that Plaintiff's probationary period was extended from three months to six months. (*Id.* at 20.)

66.    Mayor Vradenburg testified that an extension was given to give Plaintiff a "fair shake."  (*Id.* at 21.)

67.    Mayor Vradenburg testified that no one told him that they were not happy with Plaintiff's work performance.  (*Id.* at 22.)

68.    Mayor Vradenburg testified that he heard through the grape vine that Ms. Driver wasn't happy with Plaintiff's work performance.  (*Id.*)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 21 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

69.     Mayor Vradenburg testified that one would need to speak to Mr. Herdt to find out whether he was unhappy with Plaintiff's work performance. (*Id.* at 23.)

**70.**     Mayor Vradenburg testified that there was one time when he had a concern that Plaintiff was not working when he was supposed to be working. (*Id.* at 24.)

71.     Mayor Vradenburg testified that Plaintiff took leave one weekend that was okayed by his supervisor "after the fact." (*Id.*)

72.     Mayor Vradenburg testified: "But, again, we did discuss it and say that I needed Jose down there on the weekend because that was the time the park's most busy, Thursday, Friday, Saturday nights and Sunday." (*Id.* at 25.)

73.     When asked whether there was a problem with Plaintiff missing work on the weekend, Mayor Vradenburg testified: "Well, just the fact that I told Mike that he's – he needed to be there on weekends. And that was part of his schedule to schedule him. As park supervisor, you've got to be there at the busiest times." (*Id.*)

74.     Mayor Vradenburg discussed how it was decided to eliminate the Park Supervisor position and he testified: "Susan or Mike [had the idea] first. And then I sat down and we discussed it as: Was it needed? Do we need that position? And we decided that . . . position wasn't completely necessary." (*Id.* at 32.)

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 22 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✦124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

75.     Mayor Vradenburg testified that to his knowledge the position was not eliminated in order to terminate Plaintiff. "I – we discussed just eliminating the park supervisor position." (*Id.*)

76.     Mayor Vradenburg testified that Ms. Driver did not tell him that she wanted to get rid of Plaintiff.  (*Id.* at 33.)

77.     Mayor Vradenburg testified that the Park Supervisor position was not re-advertised after the position was eliminated. (*Id.* at 36.)

78.     Mayor Vradenburg testified that the decision to eliminate the Park Supervisor position was made "just before the council meeting [on Aug. 13, 2015]. We went over the costs and revenues and expenditures, what was going on." (*Id.* at 40.)

###

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 23 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF System which will send notification of such filing to:

Corey M. Kane, attorney for Plaintiff
corey@lacykane.com

DATED this 8th day of June, 2018 at Ephrata, WA.

JERRY MOBERG & ASSOCIATES, P.S.


*s/ James E. Baker*
JAMES E. BAKER, WSBA No. 9459
Attorneys for Defendants

T:\WPWIN\Entiat\Quezada v City of Entiat (CIAW)\Pleadings - Misc\454892.doc

DEFENDANTS' STATEMENT OF SPECIFIC FACTS
Page 24 of 24

**Jerry Moberg & Associates, P.S.**
P.O. Box 130 ✧124 3rd Ave S.W.
Ephrata, WA  98823
(509) 754-2356 / Fax (509) 754-4202