Corey M. Kane
Lacy Kane, P.S.
300 Eastmont Avenue
East Wenatchee, WA 98802
Phone: (509) 884-9541
Fax:    (509) 884-4805
corey@lacykane.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

JOSE QUEZADA,

               Plaintiff,

    v.

CITY OF ENTIAT and SUSAN DRIVER, individually

               Defendants.

No. 2:18-cv-00118-RMP

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LR 56.1

Honoroable Rosana Malouf Peterson
Hearing Date: August 17, 2018 at 2:30 p.m.

WITHOUT ORAL ARGUMENT

Plaintiff, Jose Quezada (Quezada), sets forth this statement of specific facts in opposition to Defendant's Motion for Summary Judgment.

1.    Quezada worked at the City of Entiat (Entiat) as Parks Supervisor.

2.    Carol Ann McLester is Deputy Clerk at Entiat and was so at the time that

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

Quezada worked there.   Exhibit A to the Supporting Declaration of Corey M. Kane, Deposition of Carol Ann McLester, p.

3.      Kieth Vradenburg (Vradenburg) was Entiat Mayor, Entiat's top administrator. Exhibit B to the Kane Dec., Deposition of Keith Vradenburg, p. 6, ll. 7-22.

4.      At the time Quezada worked for Entiat, Susan Driver (Driver) was Entiat's City Administrator.  Vradenburg Dep., p. 14, ll. 4-14.

5.      Quezada was hired by Vradenburg and Michael Herdt, on February 10, 2015. McLester Dep., p. 6, ll. 23-24; Exhibit C to the Deposition of Susan Driver, p. 9, l. 1, p. 10, ll. 1-3; Exhibit D to the Kane Dec., a copy of Quezada's hiring letter.

6.      Quezada included a cover letter with his application and during his interview, Driver questioned whether he was capable of writing that letter, having no basis to inquire so other than Quezada's appearance and race. Exhibit E to the Kane Dec., Deposition of Jose Quezada, p. 41, ll. 10-25, p. 42, ll. 1-18, p. 61, ll. 22-25, p. 62, ll. 1-20.

7.      When Entiat hired Quezada, he was led to understand that the position was permanent.  Quezada Dep., p. 43, ll. 4-6.

8.      Quezada left his job at Alcoa to work for Entiat, taking a substantial pay decrease. Vradenburg Dep., p. 11, ll. 17-24; Driver Dep., p. 27, ll. 19-21; Quezada Dep., p. 13, ll. 13-15, p. 15, ll. 13-20.

9.      Entiat enticed Quezada to leave his job at Alcoa, and one of the enticements was the opportunity to become Public Works Director.  Quezada Dep., p. 45, ll. 7-25, p.

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    2

46, ll. 1-6.

10.    Quezada took the job at Entiat to try and make a difference in his community. Quezada Dep., p. 23, ll. 23-25, p. 24, ll. 1-19.

11.    Quezada was the only Hispanic to work for Driver. Quezada Dep., p. 27, ll. 11-16.

12.    Quezada was to obtain water and sewer certifications while working for Entiat and that was always his intention. Vradenburg Dep., p. 11, l. 1, p. 12, ll. 1-6; Quezada Dep., p. 28, ll. 2-4..

13.    It takes two years to obtain sewer certification, as Entiat intended Quezada would do. Vradenburg Dep., p. 12, ll. 19-25, p. 13, ll. 1-7.

14.    Entiat ran a background check on Quezada before hiring him, and minor things appeared of no concern to the Mayor. Vradenburg Dep., p. 13, ll. 19-25, p. 14, ll. 1-3.

15.    Driver did not work with Quezada on a daily basis. McLester Dep., p. 8, ll. 5-6; Vradenburg Dep., p. 13, ll. 5-13; Driver Dep., p. 13, ll. 24-25, p. 14, ll. 1-2.

16.    Driver was not specifically involved with Quezada's employment role. Vradenburg Dep., p. 16, ll. 4-25, p. 17, ll. 1-4.

17.    Quezada had no performance issues at Entiat. Vradenburg Dep., p. 17, ll. 5-7.

18.    Driver stated: "I don't like that kid. I need to find a way to fire him,"

PLAINTIFF'S STATEMENT OF SPECIFIC
FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    3

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

referring to Quezada.  McLester Dep., p. 8, ll.

19.    Entiat employees made comments directed towards Mexicans.  Quezada Dep., p. 39, ll. 21-25, p. 40, ll. 1-3.

20.    During McLester's Dep., in violation of controlling Washington Civil Rule 30(h)(5) at the time of the Deposition, Opposing Counsel refused to allow McLester to answer a pending question before privately meeting with her regarding that pending question.  McLester Dep., 8, ll. 23-25, p. 9, ll. 1-24.

21.    Entiat terminated Quezada.  Vradenburg Dep., p. 17, ll. 16-17.,

22.    Driver eliminated Quezada's position in order to terminate him for alleged poor work performance; At her Deposition, Driver testified:

> "                    10
> **23   Q  You said -- you made the comment, "I want to get rid of that**
> **24     kid"?**
> **25   A  I made the comment after he was missing for five hours and**
>                         11
>  **1     unaccounted for, "I need to fire that kid," yes.**
>  2   Q  Why did you use the word "kid"?
>  3   A  Because I have kids his age.
>  4   Q  He's an adult, isn't he?
>  5   A  Yes.  Yes, my kids are adults too.  I still call them kids.
>                         15
> **12   Q  Do you believe Mr. Quezada was a good employee?**
> **13   A  No.  He was a terrible employee.**
>  14   Q  But you are now claiming that employees claim that you
>  15     favored him ever though he was a terrible employee?
>  16   A  Because I didn't take action sooner.  There is a memo to the

17    Personnel Committee in my personnel file, which I could get
18    for you if you'd like, that is basically my promise to the
19    City Council Personnel Committee that I will deal with the
20    morale issue that I caused and work with the remaining
21    employees to try to put things back together.

16

17  Q  You didn't like Mr. Quezada, did you?
18  A  I did like him actually.  I just thought he was not good for
19    the City.

16

23    you that wrote "too many distractions"?
24  A  Yes.  I wrote everything on this page.  This was all my
25    handwriting.

17

1  Q  And that all relates to Mr. Quezada?
2  A  Yes.
3  Q  How did you see that there were too many distractions for
4    Mr. Quezada when there were days you didn't see him?
5  A  Related primarily to reports of other people saying he was
6    always on his phone, but that when the City called him, he
7    didn't answer.

18

24  Q  And on Exhibit 2 at the bottom of the page --
25  A  Uh-huh.

19

1  Q  -- you wrote, "Marginal.  Appears to do only what he is told
2    and no more."
3  A  Yes.
4  Q  What did you witness that Mr. Quezada did where he only did
5    what he was told to do and no more?
6  A  Well, when you're looking for initiative, you're

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    5

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

looking for

7    people who will say, "Hey, why don't I do this?"  We were

8    hoping -- and I had this discussion with Mr. Quezada -- that

9    he would train to be covered in water certification, sewer

10    certification.  And because Mike didn't specifically say,

11    "You have to do this," he chose not to do it.  Which means no

12    pay incentive.  It also means no backup for Mike.  My plan

13    initially -- and we had this discussion -- was that Jose

14    would come in and learn all this stuff, and then I could get

15    rid of Mike.  But that didn't happen either so --

21

10  If you thought Mr. Quezada was a poor worker, why did you not

11    terminate him?

12  A  That is all spelled out in my memo to the Council.

13  Q  I'm asking you now.

14  A  I did not terminate him because I wanted to give him another

15    chance.  And one thing that's not in the memo to the Council,

16   is that I was that little girl.  I was the little girl whose

17    daddy couldn't keep a job.  I was the little girl who stood

18    in line at the welfare office with her mommy.  You know, I --

19    I didn't want to go that route because there were little

20    girls involved.

21   Q  Ultimately that is the route that was taken, though, wasn't

22    it?

23  A  No.

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    6

Q  Eliminating his position had the same effect as termination, didn't it?

22

A  No.  Eliminating his position allowed him to apply for unemployment and to Cobra his health insurance benefits, rather than firing him, which would not only put a black mark on his record for his next job application, but would not allow him those benefits.  This is why the other employees were upset with me, because I gave him a free pass.

Q  So eliminating his position, that was, you're testifying today, your way of getting rid of him where you didn't have to terminate him?

A  The mayor was prepared to fire him.  I asked him to wait until we got through the re-org because we were going to eliminate the position and it wouldn't have to happen that way.

Q  So was the reorganization put in place specifically to get rid of Mr. Quezada?

A  No.  It was put in place to bring in someone capable of taking Mike's job.

Q  And that is because you felt that Mr. Quezada was not capable of taking Mike's job?

A  It is because he expressed no interest and motivation in preparing himself for that job.  And Mike had

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    7

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

accosted a

22    person in the park, and I understand has done it again since

23    then. And as a liability to the City, needed to be

24    eliminated quickly. The City could not fire Mike because we

25    would have been in violation of Department of Ecology

23

1    regulations. We had nobody else who had water certification

2    and Level 2 sewer certification. So we were in a bad place.

3  Q  Mr. Quezada was going to get that certification, wasn't he?

4  A  Mike had told me that he had chosen not to do so.

5  Q  Did you ever verify that with Mr. Quezada?

6  A  No, I did not.

7  Q  Any reason you didn't verify that?

8  A  I didn't see any evidence that he was doing it. There was no

9    paperwork on my desk, so I assumed that any response that I

10    got when I asked Mike was correct.

11    Q  If you were going to terminate him on that basis, wouldn't it

12    be something that you feel it's important to follow up on?

13  A  If I was going to terminate who on that basis?

14  Q  Mr. Quezada.

15  A  No. If I was going to terminate him on that basis. But I

16    didn't terminate him, and that wasn't the reason.

17  Q  So what was the reason?

18  A  The reason that we didn't want him working there?

19  Q  Yes.

20  A  First of all, the park host position was not working out the

21    way that Mike had proposed that it would work out. The park

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd      8

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

22    host was supposed to be in the park Friday, Saturday, Sunday
23    so the Public Works Director did not have to cover weekends.
24    That wasn't happening.  We had to hire addition staff to make
25    sure all the coverage was there.  And then there was the

24

1    problem with the absenteeism And the problem with, you know,
2    yelling and cussing at other employees and not being
3    responsive.  So there were a number of things that were
4    problematic.
5    Q  Jobs were created as a result of the reorganization, weren't
6    they?
7    A  You know, I left right after that, so I really don't know
8    what they did.
9    Q  Jobs would have been created as a result of your planned
10    reorganization, wouldn't they?
11    A  A job would have been created for -- well, recreated.  We
12    would have gone back to the old model that had a Public Works
13    Director and a Field Supervisor, which was Mike Herdt's
14    previous job.  And I don't know if they hired a Field
15    Supervisor or not.
16    Q  Did you plan on hiring Mr. Quezada as a Field Supervisor?
17    A  He didn't have the necessary certifications.
18    Q  What certifications are required for a Field Supervisor?
19    A  In this case water certification.  It was specified in the
20    memo to the Council.  It was specified in the memo to the
21    staff.
22    Q  Did you ever talk to Mr. Quezada and say, "Hey, will

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    9

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

you get

23    your water certification?"

24    A  I talked to every one of the Public Works employees early on

25    about getting all the certifications they could.  I talked

25

1    with them privately, individually, motivate -- trying to

2    motivate everyone to get certifications.

**3  Q  So did you talk to Mr. Quezada and say, "Hey, will you get**

**4    your water certification?"**

**5  A  Probably.**

**6  Q  So you don't know?**

**7  A  I made a point of talking to every Public Works employee to**

**8    get certifications.**

**9  Q  I'm just asking specifically, though, about Mr. Quezada.**

**10  A  Yes, I believe I did.**

**11  Q  What was his response?**

**12  A  That he wanted to do as much as he could.  But that was when**

**13    he was first hired, then he didn't do anything.  Then that's**

**14    when I asked Mike about it, who told me that he had chosen**

**15    not to.**

26

**1  Q  On the last page of the Exhibit No. 2 it says, "Seems to be**

**2    highly distracted.  Has trouble following directions and**

**3    understanding City policies."**

**4  A  Uh-huh.**

**5  Q  Did you witness Mr. Quezada being highly distracted?**

**6  A  Yes.**

**7  Q  And what did you witness specifically?**

**8  A  I actually witnessed him on his cell phone a couple of times**

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    10

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

9    when he was out in the field.  And I also witnessed several

10    occasions that he was not responsive when City office staff

11    and public works staff called him.  And, umm--

27

1    Says, "Breakage record for three months is unbelievable."

2    What was broken?

3  A Oh, my gosh.  Truck window, a lawn mower, riding lawn mower.

4    I don't know.  I don't have a list with me.

5  Q How did the truck window break?

6  A I don't know.

7  Q How did the riding lawn mower break?

8  A I was told it was misused, but I was not there.  I only had

9    the report from the supervisor.

10  Q Who were you told it was misused by?

11  A Mike Herdt.

12  Q If you don't know how the truck window was broken, how do you

13    know Mr. Quezada broke it?

14  A  Well, that was about three years ago.  I knew at the time.  I

15    don't remember.  He didn't try to pretend he didn't break it.

16    It wasn't like anybody tried to cover it up.  It was like,

17    "Hey, I broke this window."

18    "Okay.  We're fixing it."

28

4  Q Did you make an issue of Mr. Quezada's driving record?

5  A No.

6  Q You never brought it up?

7  A I did bring it up.  I didn't make an issue of it.  I brought

8    it up when he was driving doing something or it was reported

9    to me that he was doing something illegally while

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    11

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

driving.

**10    And I asked him not to do that, and I told him we were aware**

**11    of his previous reckless driving charge.**

**12   Q   What was he doing that was reported to you?**

**13   A   Texting while driving.**

**14   Q   Where was he driving while he was allegedly texting?**

**15   A   Multiple times.  Mark Abhold told me that he was texting**

**16    while driving the recycling truck, which is a big truck with**

**17    a trailer up the Highway 2 to Chelan.  Carol told me that she**

**18    saw him talking on the cell phone driving up Kinzel Street.**

**19    Her window overlooks Kinzel Street.  Pam told me that she saw**

**20    him on the phone while he was driving into the parking lot.**

30

3   Q   If he answered the phone while he was driving, would that be

4    cause for termination for you?

5   A   Yes.  I made that very clear.

6   Q   Mr. Quezada would work when he wasn't scheduled, wouldn't he?

7   A   Not that I'm aware of.

**8    Q   Was Mr. Quezada hired knowing he didn't have water**

**9    certification?**

**10   A   Yes.  It was discussed at the interview.**

**11    Q   And it was the plan that he would get water certification?**

**12   A   Uh-huh.  Yes.**

**13   Q   And was there a set time frame in which he needed to get that**

**14    water certification?**

**15   A   Well, the intent he conveyed was that he would do it as soon**

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd     12

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

16    as possible because it meant a bump in his pay. So we didn't

17    follow -- that was the intent conveyed at the interview. So

18    we didn't put a time frame on it because we felt that he was

19    necessarily motivated.

31

21   Q  You said the reorganization was about finding an employee

22    qualified to replace Mike Herdt?

23   A  First phase -- the first phase of the reorganization was to

24    bring in someone with water certification. Because even when

25    Mike was on vacation in California, we were in violation. We

32

1    had nobody covering the -- we had nobody on staff who had

2    that certification. If anything had happened, we would have

3    been in big trouble.

4   Q  When did -- sorry. You can go ahead.

5   A  So the first phase was to bring in somebody with water

6    certification immediately.

32

18   Q  Why did the mayor want to terminate Mr. Quezada?

19   A  He was upset about the absenteeism and the City staff

20    complaining.

21   Q  Who made the mayor aware that Mr. Quezada was allegedly

22    absent?

23   A  Everyone. Everyone complained to the mayor.

37

1   Q  Mr. Quezada called a special meeting, didn't he?

2   A  Yes, he did.

3   Q  Who was present at that meeting?

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd   13

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

A  Myself, Mike Herdt, the mayor, and Jose.

Q  The mayor and Mike Herdt provided Jose with positive feedback during that meeting, didn't they?

A  I don't think Mike said much at all.

Q  But the mayor then did?

A  I wouldn't call it positive feedback, no.

Q  What would you call it?

A  The mayor was just there to say, "This is what I heard." He wants to say something.  He said what he had to say.

Q  Well, they said that they thought he was doing a good job, didn't they?

A  I don't know.  I don't remember them saying that, no.

**Q  Jose made everyone aware that he thought you were nit-picking him, didn't he?**

**A  That's what he said at that meeting.  And my response was that I'm trying to grow him.**

Q  He made everyone aware that he thought you were looking for a reason to terminate him, didn't he?

A  Not that I know of.

Q  He made everyone aware that you were going out of your way to try to find issues with his job performance, didn't he?

A  No, that did not come up.

38

**Q  He made you all aware that he believed he was being mistreated by you, didn't he?**

**A  He made us aware that he thought it was unfair that I had twice told him if he repeated this action, he would be terminated.**

**Q  What was the action you were referring to?**

**A  Two different actions.  One was driving while using the cell phone.  The other was leaving without getting proper**

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

**9**     **approval.**

Driver Dep.; McLester Dep., p. 15, ll. 21-25, p. 16, ll. 1-25, p. 17, l. 1., p. 18, ll. 17-19.

23.     Quezada was not given a Loudermill pre-termination hearing to respond to the allegations against him.  Driver Dep., p. 31, ll. 1-4.

24.     The elimination of the Park Supervisor position was intended to create additional Public Works position**s** that performed Quezada's job duties**.**  Vradenburg Dep., p. 34, ll. 9-25, p. 35, ll. 1-18, p. 37, ll. 18-25, p. 38, ll. 8-25, p. 39, ll. 1-10.

25.     Entiat has no explanation as to how the new positions and job duties were different from that of Quezada's.  Vradenburg Dep., p. 42, ll. 3-16.

26.     The white people that Entiat hired in fact were allowed to obtain their certifications on-the-job.  Vradenburg Dep., p. 42, ll. 23-25, p. 43, ll. 1-12.

27.     Quezada always intended to get his certifications.  Vradenburg Dep., p. 33, ll. 14-25, p. 34, ll. 1-5.

28.     Driver is not aware how an employee obtains water certification.  Driver Dep., p. 34, ll. 20-22.

29.     Quezada was to obtain his certifications during the slow season, but he was terminated before he could do so.  Driver Dep., p. 34, ll. 23-25, p. 35, ll. 1-8; Quezada Dep., p. 28, ll. 2-9.

30.     Driver never investigated when Quezada would be getting his certifications.

PLAINTIFF'S STATEMENT OF SPECIFIC
FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd     15

**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

Driver Dep., p. 30, ll. 13-25.

31.    Entiat employees, aside from Quezada, frequently used their cell phones while working without issue; Only Quezada was singled out for his cell phone use. McLester Dep., p. 14-22; Vradenburg Dep., p. 23, ll. 17-25, p. 24, ll. 1-5; Quezada Dep., p. 25, ll. 24-25, p. 26, ll. 1-12, p. 49, ll. 3-13, p. 62, ll. 21-25, p. 63, ll. 1-8.

32.    Herdt talked to Driver about Quezada's performance.  Vradenburg Dep., p. 15, ll. 1-4.

33.    Herdt never told Vradenburg that Quezada had any performance issues. Vradenburg Dep., p. 23, ll. 2-4

34.    Herdt, Quezada's immediate supervisor, wishes he had five employees like Quezada.  McLester Dep., p. 20, ll. 23-25, p. 21, ll. 1-25, p. 22, ll. 1-25, p. 23, ll. 1-7; Vradenburg Dep., p. 14, ll. 15-23.

35.    Driver drafted a poor evaluation for Quezada that she never gave him , which was not verified or corroborated by Entiat employees that worked with him.  Driver Dep., p. 35, ll. 14-25, p. 36, ll. 1-10; Exhibit F to the Kane Dec., a copy of that unfounded evaluation.

36.    There is no basis to support why Driver and not Herdt evaluated Quezada, and this procedure was improper.  Vradenburg Dep., p. 15, ll. 13-25, p. 16, ll. 1-3; Driver Dep., p. 30, ll. 23-25.

37.    Quezada was given the understanding that his employment would be long

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS

c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    16



**LACY KANE & KUBE**
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

term.  Quezada Dep., p. 40, ll. 22-25, p. 41, ll. 1-5.

38.    Quezada was placed on a probationary period which was extended from three (3) months to six (6) months.  Vradenburg Dep., p. 20, ll. 18-22.

39.    Vradenburg is unaware as to any reason why Driver could have been unhappy with Quezada's performance.  Vradenburg Dep., p. 22, ll. 17-15, p. 23, l. 1.

40.    If Quezada was unable to work, his leave was always okayed by Herdt, but Driver nevertheless threatened his employment for unauthorized leave.  Vradenburg Dep., p. 24, ll. 8-20, p. 25, ll. 12-19, Quezada Dep., p. 26, ll. 13-22.

41.    The employees that replaced Quezada where not Hispanic.  Vradenburg Dep., p. 28, ll. 12-258, p. 29, ll. 1-25, p. 30, ll. 1-25, p. 31, ll. 1-2.

42.    Driver singled out and mistreated Quezada due to his race, and Entiat endorsed her actions and decisions.  Quezada Dep., p. 17, ll. 9-20, p. 18, ll. 18-23, p. 23, ll. 3-25, p. 24, ll. 1-19.

43.    Driver falsely told Quezada that Vradenburg was not happy with his work performance.  Quezada Dep., p. 20, ll. 15-23, p. 25, ll. 4-15.

44.    Entiat's Personnel Policies states that an employee's trial period begins upon hire.  Exhibit B to the Declaration of Susan Driver, p. 39, a copy of that policy.

45.    Entiat's Personel Policies state that an employee, if not a trial employee, is entitled to progressive discipline and a pre-termination hearing.  Exhibit B to the Driver Dec., p. 66, a copy of that policy.

PLAINTIFF'S STATEMENT OF SPECIFIC FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    17

46.    At the time of his termination, Quezada had been employed by Entiat longer than six months and was no longer a probationary employee. (February 10, 2015 to August 31, 2015). See Exhibit G to the Kane Dec., a copy of a September 15, 2015 letter from Driver outlining the same.

DATED this 29th day of June, 2018.

LACY KANE & KUBE, P.S.

s/ Corey M. Kane
COREY M. KANE, WSBA #49710
Attorney for Plaintiffs
Lacy  Kane & Kube, P.S.
300 Eastmont
East Wenatchee, WA 98802
Telephone: (509) 884-9541
Fax: (509) 884-4805
Email: corey@lacykane.com

PLAINTIFF'S STATEMENT OF SPECIFIC
FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    18



LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

James E. Baker
jbaker@jmlawps.com

LACY KANE & KUBE, P.S.

s/Corey M. Kane
COREY M. KANE, WSBA #49710
Attorney for Plaintiffs
Lacy  Kane & Kube, P.S.
300 Eastmont
East Wenatchee, WA 98802
Telephone: (509) 884-9541
Fax: (509) 884-4805
Email: corey@lacykane.com

PLAINTIFF'S STATEMENT OF SPECIFIC
FACTS
c2:Z:\QUEZADA-J.emp\Pleadings\Summary Judgment\PSOF.wpd    19

LACY KANE & KUBE
300 Eastmont Avenue
East Wenatchee, WA 98802
(509) 884-9541 ◆ Fax: (509) 884-4805