FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 07, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE QUEZADA,<br><br>     Plaintiff,<br><br>  v.<br><br>CITY OF ENTIAT; and SUSAN<br>DRIVER, individually,<br><br>     Defendants. | NO: 2:18-CV-118-RMP<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF No. 5. The Court heard oral argument on this motion on August 21, 2018. Corey M. Kane appeared on behalf of Plaintiff Jose Quezada. James E. Baker appeared on behalf of Defendants City of Entiat and Susan Driver (collectively, "Defendants"). The Court has considered the parties' arguments, has reviewed the pleadings and the record, and is fully informed.

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

## PROCEDURAL BACKGROUND

Mr. Quezada initially brought this action in Washington state court alleging claims against Defendants for violations of the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.180; breach of contract; breach of promise of specific treatment in specific circumstances; and wrongful termination in violation of public policy. *See* ECF No. 1-2. Mr. Quezada subsequently amended his complaint to allege a federal cause of action under 42 U.S.C. § 1983 for violation of due process. *See* ECF No. 1-3 at 4. Defendants then removed the matter to federal district court, ECF No. 1, and filed the present motion for summary judgment. ECF No. 5.

Proceedings initiated in state court may be removed "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal is proper here because this suit involves a federal question. *See* 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1446 (procedure for removal of civil actions).

Accordingly, this Court has jurisdiction over this matter because Plaintiff has raised a federal question by alleging violation of due process under 42 U.S.C. § 1983, and supplemental jurisdiction over Mr. Quezada's Washington State law claims pursuant to 28 U.S.C. § 1367.

/ / /

/ / /

## FACTUAL BACKGROUND

In early 2015, the City of Entiat, Washington decided to change the way it would manage Entiat Park. ECF No. 6 at 3. Instead of using the Park Host system, in which a couple would live in the Park for the summer and manage it as seasonal employees, the City decided to create a new position called Park Supervisor. *Id.* at 3-4. The Park Supervisor would oversee five part-time seasonal workers, who completed the tasks for which the Park Hosts were previously responsible, and would train for water and sewer certification. *Id.* The City needed a second person with water and sewer certifications because it only had one person on staff with those certifications. *Id.* Because the Park Supervisor position was new, the City decided to impose a six-month probationary period, rather than the standard three months, to evaluate the position throughout the summer. *Id.* at 4. Defendant Susan Driver was the City Administrator/Planner for the City of Entiat throughout this process. *Id.* at 2.

The City hired Plaintiff Jose Quezada for the Park Supervisor position. *Id.* Mr. Quezada is Hispanic. *See* ECF No. 1-3 at 3. During Mr. Quezada's interview, Ms. Driver asked whether Mr. Quezada had written his cover letter, to which he responded that his wife had assisted him. ECF No. 9 at 2; ECF No. 10-1 at 76. Following the interview, the City sent Mr. Quezada an offer letter on February 10, 2015. ECF No. 6-1 at 6. The offer letter stated that his official start date was March

2, and his continued employment depended on satisfactory job performance during the initial six month probationary period. *Id.*

Mr. Quezada was provided a copy of the City's personnel policies when he was hired. ECF No. 6 at 5. The policies state they "are not intended to be a contract, express or implied, or any type of promise or guarantee of specific treatment upon which [an employee] may rely, or as a guarantee of employment for any specific duration." ECF No. 6-1 at 9. Policy 3.4 states that an employee's trial period, also referred to as the probationary period, begins "[u]pon hire," and lasts up to six months "from the employee's date of hire." *Id.* at 15. Policy 10.3 states that, upon "termination of an employee [other than trial employees], the city will conduct a pre-termination hearing." *Id.* at 42 (bracketed text in original). Mr. Quezada confirmed that he received these policies. *Id.* at 8.

Throughout Mr. Quezada's employment in the summer of 2015, Ms. Driver claims that she received numerous complaints about Mr. Quezada's work, including reports of rude and disrespectful behavior to other City staff, refusal to learn how to maintain the irrigation system, texting and using his phone at work, and generally being absent or unavailable during his work hours. ECF No. 6 at 6-9. Ms. Driver prepared an internal evaluation of Mr. Quezada on June 12, 2015. *Id.* at 9. The evaluation gave Mr. Quezada a poor performance review. *Id.*; *see also* ECF No. 6-1 at 46-48. Mr. Quezada claims that Ms. Driver, a person with whom he did not work on a daily basis, was the only person to complain about his work, and that his

supervisor, Mike Herdt, did not notice any performance issues.  ECF No. 9 at 3-4, 16.

Later in the summer, Ms. Driver realized that the composition of city staff left the City in a position of liability.  ECF No. 6 at 10.  Whenever the Public Works Director, Mike Herdt, was away, the City had no one on staff with water or sewer certification.  *Id.*  To fix this issue, Ms. Driver proposed to the City Council a reorganization of the Public Works and Park Departments.  *Id.* at 10-12.  The reorganization involved eliminating the Park Supervisor position, which was Mr. Quezada's position, reinstituting Park Hosts, and hiring a full-time employee in Public Works who had water and sewer certifications.  *Id.* at 11-12.  The City Council adopted Ms. Driver's proposal, and voted to eliminate the Park Supervisor position on August 13, effective August 31.  *Id.* at 12.

Mr. Quezada alleges that he wrongfully lost his employment with the City as a result of Defendants' discriminatory conduct.  *See* ECF 1-3.  He claims that he was led to believe that the job with the City was permanent, enticing him to leave his previous job and take a substantial pay decrease.  ECF No. 9 at 2.  Mr. Quezada states that Ms. Driver did not like him from the moment that he was hired, and stated that she needed to find a way to fire him.  *Id.* at 3-4.  He also claims that City employees often made comments directed towards Mexicans.  *Id.* at 4.  Lastly, he claims that the new position in Public Works created as a part of the City's

1 reorganization plan was essentially the same position, with similar job duties, that

2 Mr. Quezada had held as Park Supervisor. *Id.* at 15.

3 **DISCUSSION**

4 ***Legal Standard for Summary Judgment***

5     A court may grant summary judgment where "there is no genuine dispute as

6 to any material fact" of a party's prima facie case, and the moving party is entitled to

7 judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*,

8 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists if sufficient

9 evidence supports the claimed factual dispute, requiring "a jury or judge to resolve

10 the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac.*

11 *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of

12 summary judgment "is to isolate and dispose of factually unsupported claims."

13 *Celotex*, 477 U.S at 324.

14     The moving party bears the burden of showing the absence of a genuine issue

15 of material fact, or in the alternative, the moving party may discharge this burden by

16 showing that there is an absence of evidence to support the nonmoving party's prima

17 facie case. *Id.* at 325. The burden then shifts to the nonmoving party to set forth

18 specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving

19 party "may not rest upon the mere allegations or denials of his pleading, but his

20 response, by affidavits or as otherwise provided . . . must set forth specific facts

21

showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts). However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A. Plaintiff's Section 1983 Claim

Mr. Quezada alleges that Defendants' policies and customs denied Mr. Quezada due process and directly caused his injuries, depriving Mr. Quezada of his alleged protected property and liberty interests in his employment by the City of Entiat. ECF No. 1-3 at 5. Defendants argue that Mr. Quezada's section 1983 claim fails because Mr. Quezada had no protected property interest in the probationary employment; Mr. Quezada had no liberty interest that was deprived; Mr. Quezada cannot satisfy the requirements of *Monell* as to the City; and Ms. Driver is entitled to qualified immunity. *See* ECF No. 5 at 4-10.

To satisfy the legal standard required by 42 U.S.C. § 1983, a plaintiff must prove that two essential elements are present in his or her claim. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v.*

*Williams*, 474 U.S. 327 (1986).  First, the conduct complained of must be "committed by a person acting under color of state law."  *Id.*  Second, the plaintiff must show that the conduct complained of deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or federal statutory law.  *See id.*

Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right."  *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986).  In a section 1983 suit, "the plaintiff must still prove a violation of the underlying constitutional right."  *Id.* at 330.

The Court finds that the first prong is satisfied:  Ms. Driver acted under color of state law.  Ms. Driver was the City Administrator for Entiat during the relevant time period.  ECF No. 6 at 2.  Her actions in hiring and reorganizing Mr. Quezada's job duties were in her capacity as City Administrator.  Thus, the Court finds that Ms. Driver acted under color of state law.  The Court next turns to whether Defendants deprived Mr. Quezada of some underlying constitutional right.

**1. Protected Property Interest Claim**

Mr. Quezada alleges that Defendants deprived him of his protected property interest in continued, permanent employment with the City in violation of his constitutional rights.  ECF No. 1-3 at 5.

The Supreme Court has held that "public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process."  *Gilbert v. Homar*, 520 U.S. 924, 928-29

1   (1997).  However, an at-will government employee generally has no claim based on

2   the Constitution.  *Waters v. Churchill*, 511 U.S. 661, 679 (1994).

3          Under Washington state law, an at-will employee does not have a protected

4   property right in his employment.  *Clark v. Sears, Roebuck & Co.*, 41 P.3d 1230,

5   1232 (Wash. Ct. App. 2002).  However, a property interest in employment can be

6   created by implied contract.  *Bishop v. Wood*, 426 U.S. 341, 344 (1976).  In

7   Washington, an implied contract may arise out of customs, practices, and de facto

8   policies.  *Hudson v. City of Wenatchee*, 974 P.2d 342, 346 (Wash. Ct. App. 1999).

9          Defendants argue that Mr. Quezada was an at-will employee for the City of

10  Entiat, and, therefore, he had no protected property interest in his employment with

11  the City.  ECF No. 5 at 4.  Defendants assert that the City's employment policies

12  specifically state that they "do not create an employment contract or a guarantee of

13  employment for any specific duration" and "are not intended to be a contract,

14  express or implied, or any type of promise or guarantee of specific treatment upon

15  which [an employee] may relay, or as a guarantee of employment for any specific

16  duration."  *Id.* at 5.

17         Mr. Quezada argues that Defendants created an implied contract for continued

18  employment, *see* ECF No. 8, however he fails to assert any facts or provide any

19  evidence to support this contention.  He simply states that he was "enticed" to leave

20  his prior position to work for the City, and during that enticement, he was "led to

21  understand that the position was permanent."  ECF No. 9 at 2.  Additionally, he

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 9

appears to rely on his status as a public employee, arguing that a public employee is entitled to constitutional protection in addition to any contractual protection. *See* ECF No. 8 at 18. Therefore, he argues that he was entitled to notice and an opportunity for "some kind of hearing" prior to his discharge. *Id.*

Without additional evidence, Mr. Quezada does not raise a genuine issue of material fact regarding whether he had a protected property interest in continued employment, via implied contract or otherwise. First, Mr. Quezada's employment with the City was expressly at-will. *See Clark*, 41 P.3d at 1232. As such, the City had a right to terminate his employment at any time, as long as there was no illegal reason or motive behind the firing. *See Waters*, 511 U.S. at 679; *Hudson*, 974 P.2d at 346.

Second, there is no evidence of a promise of continued employment. While Mr. Quezada claims that he was led to believe the employment with the City would be permanent, no evidence before the Court supports this claim. ECF No. 9 at 2. While the Court will construe the evidence in the light most favorable to Mr. Quezada, the nonmoving party, the Court will not assume missing evidence. *Lujan*, 497 U.S. at 888-89. Instead, the record supports that Mr. Quezada's status was as a probationary, at-will employee, as evidenced by the text of his offer letter and the City's personnel policies. ECF No. 6-1 at 6, 15, 42.

Absent the promise of continued employment, Mr. Quezada still argues that he was entitled to a pre-termination hearing because he was no longer a trial or

probationary employee when his position was eliminated on August 31. ECF No. 8 at 19. He claims that his employment started on February 10, the day he received his offer letter, and argues that his probationary status ended on August 10, 2015, before his August 31 termination. *Id.* Defendants claim that his probationary period did not begin to run until March 2, 2015, Mr. Quezada's start date, and his probationary status continued until his position was eliminated. ECF No. 11 at 2.

The text upon which Mr. Quezada relies states as follows: "Upon hire or appointment, all employees enter a trial period that is considered an integral part of the selection and evaluation process. . . . The normal trial period is three months from the employee's date of hire, rehire or promotion. The Mayor may authorize the supervisor to extend the trial period up to an additional three (3) months." ECF No. 6-1 at 15.

The policy states that the purpose of the trial period is "to give the employee time to learn the job and to give the supervisor time to evaluate whether the match between the employee and the job is appropriate." *Id.* There is no evidence that Mr. Quezada began his work prior to March 2, 2015. Considering that Mr. Quezada was not doing work for the City between February 10 and March 2, 2015, it makes no sense for the probationary period to start on a date before he actually begins the work, because there would be no opportunity for a supervisor to evaluate him.

The policy further states that "[o]nce the trial period is successfully completed, the employee may be certified to regular employment status." *Id.* There

is no evidence in this case that Mr. Quezada was ever certified to regular employment status following August 10, 2015, when he claims that his probationary period ended. Therefore, the Court finds that Mr. Quezada was still a trial, or probationary, employee when his position was terminated on August 31, 2015.

The Court finds that Mr. Quezada was an at-will employee for the City of Entiat during the relevant period. Additionally, Mr. Quezada was not entitled to a pre-termination hearing because he was still a trial or probationary employee. Therefore, Mr. Quezada suffered no deprivation of a property interest because he had no property interest in continued employment with the City of Entiat.

### 2. Protected Liberty Interest Claim

Mr. Quezada also alleges that Defendants deprived him of his protected liberty interest without due process, in violation of section 1983. ECF No. 1-3 at 5.

In order to prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). The courts require "a 'careful description' of the asserted fundamental liberty interest," as well as a demonstration that the interest is "objectively, 'deeply rooted in this Nation's history and tradition' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist [if it] was sacrificed.'" *Washington v. Glucksberg,* 521 U.S. 702, 720-21 (1997) (internal citations omitted). The relevant question is not whether the asserted interest "is consistent with [the United States Supreme Court's] substantive-due-

process line of cases" but whether it is supported by "this Nation's history and practice." *Id.* at 723-24.

Defendants argue that Plaintiff cannot identify a fundamental liberty interest or a statute that confers on him a liberty interest protected by the Due Process Clause. *See* ECF No. 5 at 8-9. Defendants contend that Mr. Quezada did not have a liberty interest and therefore could not have been deprived of his liberty interest when the City eliminated the Park Supervisor position. *Id.* Therefore, Mr. Quezada lacks a due process liberty claim. *Id.*

Mr. Quezada fails to respond to Defendants' arguments or to present any facts in support of his assertion regarding the alleged constitutional violation of his liberty interest. The Court will not infer evidence that does not exist in the record. *See Lujan*, 497 U.S. at 888-89. Therefore, the Court finds that Mr. Quezada cannot prevail on his claim of deprivation of liberty without due process of law.

### 3. The City's Section 1983 Liability Under *Monell*

Even though the Court finds that Mr. Quezada was not deprived of either a property or liberty interest by the City of Entiat or Ms. Driver, the Court will analyze §1983 liability issues to complete the record.

To successfully advance a claim under section 1983 against the City of Entiat, Mr. Quezada must meet the requirements of *Monell*. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690-91 (1978). Under *Monell*, a city is only liable under section 1983 if (1) the constitutional violation resulted from a

government policy, practice, or custom; (2) the person who committed the harm was

a person with final policy-making authority, meaning the act itself constituted

government policy; or (3) an official with final policy-making authority ratified the

unconstitutional act. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

A plaintiff must prove that one of the three *Monell* requirements is met to be

successful in section 1983 litigation against a municipal body. *See Bd. Of Cty.*

*Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997).

Defendants argue that Mr. Quezada cannot satisfy the *Monell* requirements

because he cannot point to any "formal governmental policy or longstanding

practice or custom" that caused his termination. *See* ECF No. 5 at 8 (quoting

*Gillette*, 979 F.2d at 1346-47 (internal quotations omitted)).  Defendants argue that

because Mr. Quezada has not satisfied the requirements of *Monell*, he cannot pursue

his section 1983 claim against the City of Entiat. *Id.*

Mr. Quezada contends that Ms. Driver was an official with "final policy-

making authority," that she made decisions with deliberate indifference to known

consequences that were ratified by the City of Entiat, and that her deliberate

indifference directly resulted in Mr. Quezada's constitutional deprivation. *See* ECF

No. 8 at 20.

Regarding the policy, custom, or practice prong of *Monell*, a plaintiff may

show this *Monell* requirement by pointing to "widespread practices or evidence of

repeated constitutional violations" among the municipal body. *Nadell v. Las Vegas*

*Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (internal quotations omitted). To survive summary judgment, Plaintiff must submit evidence that the municipal body's constitutional violations led to an inferred or internalized municipal custom or policy. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1148-49 (9th Cir. 2005) (finding dispute of material fact on question of municipal policy given plaintiffs' evidence of city's widespread practices of repeated constitutional violations).

Here, Mr. Quezada has presented no evidence to support the fact that he was fired under a municipal policy, practice, or custom. No evidence in the record indicates that there was a pattern or practice that the City promised long-term employment, created a right to continued employment, and then fired employees without pre-termination hearings. Mr. Quezada cannot meet his burden to show that he was fired due to a policy, practice, or custom of Entiat.

"For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [government body.]" *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). In identifying whether an actor is a person with final policy-making authority, the court asks whether the person has authority "in a particular area, or on a particular issue." *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997). For example, when the Supreme Court considered a case regarding an employee transfer, the question was whether the government actor "possessed final policymaking authority in the area of

employee transfers." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989). State law defines whether a particular person is a final policymaker. *Id.* at 737.

Again, Mr. Quezada has presented no evidence to prove that Ms. Driver was in a position of final policymaking authority for eliminating city positions. There is no evidence that Ms. Driver, personally, made the final decision to eliminate the Park Supervisor position. The record supports that Ms. Driver submitted her reorganization plan to the City Council and the Mayor, which was adopted by them, resulting in Mr. Quezada's termination. ECF No. 6 at 12. That evidence supports the conclusion that Ms. Driver did not have final policymaking authority on the matter of eliminating positions of employment. *Id.*

Mr. Quezada also contends that Ms. Driver's decision was ratified by someone with final policymaking authority, thereby satisfying the third method of establishing *Monell* liability. Here, Ms. Driver's reorganization plan was approved by the City Council, which led to the elimination of Mr. Quezada's position. ECF No. 6 at 11-12. While Mr. Quezada cited no specific state or local law indicating that Entiat's City Council possessed final policymaking authority, the Court concludes that the City Council is the final policymaking authority of Entiat. *See Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001) (holding city council possessed final policymaking authority for a city in Washington). Because the City Council approved the reorganization plan, which eliminated Mr. Quezada's position, the City Council could be deemed as ratifying Ms. Driver's decision to reorganize.

1    If Mr. Quezada had been deprived of his property or liberty interests without

2    due process, which the Court concludes that he was not, then Entiat may have been

3    liable under *Monell* for the alleged constitutional violations.  However, because

4    there were no property or liberty interests and no constitutional violations, Entiat is

5    not liable under section 1983.

6    **4. Qualified Immunity Relating to Ms. Driver**

7    Defendants invoke qualified immunity on behalf of Ms. Driver.  ECF No. 5 at

8    9.  Again, the Court finds that there was no deprivation of rights, but analyzes Ms.

9    Driver's qualified immunity argument to complete the record.

10    Qualified immunity is "an entitlement not to stand trial or face the other

11    burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotes

12    omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223

13    (2009).  When government officials invoke qualified immunity from suit, courts

14    must decide the claim by applying a two-part analysis: (1) whether the conduct of

15    the official, viewed in the light most favorable to plaintiff, violated a constitutional

16    right; and (2) whether the right was clearly established at the time of the alleged

17    violation.  *See Pearson*, 555 U.S. at 232-36.  "[G]overnment officials performing

18    discretionary functions [are entitled to] qualified immunity, shielding them from

19    civil damages liability as long as their actions could reasonably have been thought

20    consistent with the rights they are alleged to have violated." *Anderson v. Creighton*,

21    483 U.S. 635, 638 (1987).  Qualified immunity gives government officials

"breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011).

Defendants argue that Mr. Quezada lacks evidence to establish that Ms. Driver violated Mr. Quezada's federal rights, and that she would be entitled to qualified immunity even if such a violation was found. ECF No. 5 at 4-9. Defendants also assert that it was objectively reasonable for Ms. Driver to believe that her actions in drafting a workforce reorganization plan did not violate any clearly established law or federal constitutional right. *Id.* at 10.

Mr. Quezada does not challenge or oppose Defendants' arguments regarding Ms. Driver's entitlement to qualified immunity. Therefore, the Court views Plaintiff as conceding that Ms. Driver is entitled to qualified immunity. In addition, Ms. Driver did not deprive Mr. Quezada of any liberty or property interest without due process when she proposed to eliminate the Park Supervisor position. Without a denial of due process, there is no constitutional violation, even when taking the evidence in the light most favorable to Mr. Quezada.

Taking all of the arguments related to Mr. Quezada's section 1983 claim into consideration, the Court finds that Mr. Quezada has failed to raise a genuine issue of material fact regarding his section 1983 claim because he did not have a property or liberty interest. Therefore, Mr. Quezada could not have been denied his interests without due process in violation of 42 U.S.C. § 1983.

The Court finds that summary judgment in favor of all Defendants regarding Mr. Quezada's section 1983 claims is appropriate and dismisses Mr. Quezada's section 1983 claims with prejudice.

**B. Plaintiff's State Law Claims**

**1. Racial Discrimination Claim Under WLAD**

The Washington Law Against Discrimination (WLAD) prohibits racial discrimination in employment. Wash. Rev. Code § 49.60.180. Washington courts examine WLAD claims by applying the *McDonnell Douglas* burden-shifting framework. *See Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 470 (Wash. 2017); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, the initial burden lies with the plaintiff to "establish[] a prima facie case of racial discrimination." *McDonnell Douglas*, 411 U.S. at 802. Once a prima facie case is established, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *Id.* If the employer meets this intermediate burden, the plaintiff is given an opportunity to discredit the employer's explanation by showing that it was "a coverup for a racially discriminatory decision." *Id.* at 805. The plaintiff must do more than show "that the employer's explanation of its action was not believable." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514-15 (1993). The plaintiff must prove "that the employer's action was the product of unlawful discrimination." *Id.* at 514.

### a. *Prima Facie Case of Discrimination*

Mr. Quezada has the initial burden to establish a prima facie case of discrimination by "showing that (1) [he] was within a statutorily protected class, (2) [he] was discharged by the defendant, (3) [he] was doing satisfactory work, and (4) after [his] discharge, the position remained open and the employer continued to seek applicants with qualifications similar to [his own]." *Mikkelsen*, 404 P.3d at 470. The City argues that Mr. Quezada has not established a prima facie case without expressly stating which elements of his case that it disputes. ECF No. 5 at 12; ECF No. 11 at 5. Mr. Quezada argues that he has proven a prima facie discrimination case. ECF No. 8 at 3-5.

The parties agree that the first two elements are satisfied, because Mr. Quezada belongs to a protected class and he suffered an adverse employment action. The parties dispute the third and fourth elements.

For the third element, Mr. Quezada must show that he was doing satisfactory work before the City eliminated his position. *See Mikkelsen*, 404 P.3d at 470. The Defendants argued that the City "decided to hire a Park Supervisor to manage Entiat Park so that the Public Works Director would be free to work on projects in the broader city with the rest of the Public Works crew." ECF No. 6 at 3. The City wanted the Park Supervisor to "train for water and sewer certification [in the off-season] and . . . work a different schedule during the summer to cover weekends in

the park so that [the Public Works Director] would not have to be available on the weekends." *Id.*

Defendants argue that Mr. Quezada was not performing satisfactory work as the Park Supervisor. On June 12, 2015, Susan Driver conducted a preliminary internal evaluation of Mr. Quezada. ECF No. 6-1 at 46-48. The evaluation gave Mr. Quezada "marginal" or "needs improvement" marks in several areas, including position knowledge, quantity of work, initiative, cooperation, and dependability. *Id.* Ms. Driver testified at her deposition that Mr. Quezada had problems with absenteeism, yelling and cussing at other employees, and unresponsiveness to work matters. ECF 10-2 at 24.

Mr. Quezada claims that Ms. Driver's evaluation is "deceptive" and that she never gave it to him or anyone else. ECF No. 8 at 9; ECF No. 9 at 16. Carol Ann McLester, the City's Deputy Clerk, testified during her deposition that Mr. Quezada's immediate supervisor, Mike Herdt, was pleased with his work. ECF No. 10-1 at 13, 28. However, Mr. Herdt's own testimony is absent from the record. Mayor Keith Vradenburg testified during his deposition that he was not aware of any issues with Mr. Quezada's work. *Id.* at 25. In addition, the City concedes that Mr. Quezada's position was eliminated due to a reorganization of the Public Works Department, not due to Mr. Quezada's poor work performance. ECF No. 5 at 2; ECF No. 6 at 10-11.

1    Taking the evidence in the light most favorable to Mr. Quezada, the non-

2    moving party, there is at least a dispute of material fact as to whether Mr. Quezada

3    performed satisfactory work. On one hand, Ms. Driver claims there were several

4    problems with Mr. Quezada's work, including rude behavior, texting on the job, and

5    taking unexcused absences. ECF No. 6 at 5-6. On the other hand, Mr. Quezada

6    argues that his direct supervisor and the mayor had no issues, and had heard no

7    issues, with Mr. Quezada's job performance. ECF No. 9 at 16-17. The Court finds

8    that a dispute of material fact exists on the third element regarding whether Mr.

9    Quezada was performing satisfactory work.

10    For the fourth element, Mr. Quezada must show that after eliminating his

11    position, the City continued to seek applicants with qualifications similar to his own.

12    *Mikkelsen*, 404 P.3d at 470. Defendants assert that they decided to eliminate the

13    Park Supervisor position and added a new position in Public Works because the City

14    of Entiat immediately needed a qualified employee with water and sewer

15    certification to cover for Mike Herdt when he was away. ECF No. 6 at 10. Mr.

16    Quezada contends that Defendants' proffered reason is pretext and that by

17    eliminating his position, the City "intended to create additional Public Works

18    positions that performed [his same] job duties." ECF No. 9 at 15.

19    While Defendants contend that no one was hired to replace Mr. Quezada

20    because his position was eliminated, the City sought to hire a person who already

21    had water and sewer certifications after eliminating Mr. Quezada's position. ECF

No. 10-1 at 41.  The record reflects that the City was unsuccessful in hiring someone who already was water and sewer certified, and instead, hired a maintenance worker who had similar qualification to Mr. Quezada and who became water and sewer certified on the job.  ECF No. 10-1 at 42.

The evidence supports that the City of Entiat attempted to replace Mr. Quezada, who was not water and sewer certified, with an employee who was water and sewer certified.  However, since the new position in Public Works was filled with someone who had qualifications similar to Mr. Quezada, the Court will examine whether the City of Entiat's proffered explanation is pretextual.

### Legitimate, Non-Discriminatory Reason for Termination

If the Court finds that Mr. Quezada has established a prima facie case, then a rebuttable presumption of discrimination is created.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to the City "to articulate some legitimate, nondiscriminatory reason" for eliminating Mr. Quezada's position.  *McDonnell Douglas*, 411 U.S. at 802.  At this stage, the City "merely [has] a burden of production, not of persuasion."  *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 446 (Wash. 2001), *abrogated on other grounds by Mikkelsen*, 404 P.3d at 473; *see also Burdine*, 450 U.S. at 257 ("the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that [its decision was not] motivated by discriminatory animus").

The City asserts that it eliminated Mr. Quezada's position in order to allocate resources from Parks to Public Works. ECF No. 5 at 2. The City argues that it needed an additional employee with the State-required water certification to fill in for the Public Works Director when he went on vacation. ECF No. 6 at 10. The City formulated a plan to reorganize the Public Works Department. *Id.* The City's plan involved "eliminating the Park Supervisor position and going back to the previous strategy of using a Park Host couple." *Id.*

The Court finds that the Defendants have produced ample evidence of non-discriminatory reasons for eliminating Mr. Quezada's position with the City. There were several reasons that the City chose to eliminate the Park Supervisor position. First, the City needed someone with the necessary certifications immediately, not a person who would train on the job and eventually receive it, to save the city from liability concerns when Mike Herdt was away. ECF No. 6 at 10. Second, the City concluded that a person with water certifications would be better placed in Public Works rather than in Parks, because the previous Park Host arrangement with seasonal employees could handle the workload that Parks required. *Id.* at 12. Third, the City concluded that it needed someone who could work directly with the Public Works director and eventually replace him, especially considering the trouble that the current director had encountered with some park patrons. ECF No. 10-2 at 15.

The Defendants have met their burden in producing non-discriminatory reasons for terminating Mr. Quezada's position.

### b. *Plaintiff's Proof of Discrimination*

If the Court finds that the City has satisfied its burden of producing non-discriminatory reasons for eliminating Mr. Quezada's position, then the presumption of discrimination is rebutted. *See Hill*, 23 P.3d at 446. The burden then shifts back to Mr. Quezada to offer proof of discrimination. *See St. Mary's*, 509 U.S. at 511. To meet this burden and overcome summary judgment, Mr. Quezada must offer "sufficient evidence to create a genuine issue of material fact either (1) that the employer's articulated reason for its action is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 334 P.3d 541, 544 (Wash. 2014) (citing *McDonnell Douglas*, 411 U.S. at 792).

Mr. Quezada claims that the City "implemented a reorganization as pretext to terminate [him] for being Hispanic." ECF No. 8 at 2. Mr. Quezada proffers circumstantial evidence of discrimination, such as the question that Ms. Driver asked during his interview regarding the authorship of his cover letter and a comment made that she needed "to fire that kid." *Id.* at 8-10. However, Mr. Quezada does not offer any evidence linking those comments to racial animus, or any evidence to support the inference that his race was a factor in the City's decision to eliminate his position.

Although the City does not dispute that Ms. Driver asked Mr. Quezada during his interview if he wrote his own cover letter, Ms. Driver's explanation for asking

the question was that a lot of people do not write their own cover letters and she thought that Mr. Quezada's was well written.  ECF No. 11 at 5.  The City also does not dispute that Ms. Driver said, "I need to fire that kid" in reference to Mr. Quezada.  *Id.*  Ms. Driver's explanation for making the comment was that Mr. Quezada had been unaccountable for five hours during a work day.  *Id.*  For each of Mr. Quezada's examples of alleged discrimination, Defendants provide evidence of nondiscriminatory explanations.

While a plaintiff is not required to "introduce additional, independent evidence of discrimination" to survive summary judgment, the Court may consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case" to determine whether summary judgment is appropriate.  *Reeves v. Sanderson Pulmbing Prods.*, 530 U.S. 133, 148-49 (2000).  Mr. Quezada offers no evidence to support his claim that Ms. Driver "disliked him because he is Hispanic" or that "she thought he looked incapable."  ECF No. 8 at 8.  Ms. Driver testified that she liked Mr. Quezada, but that she "thought he was not good for the City."  ECF No. 10-2 at 16.  However, even if Ms. Driver disliked Mr. Quezada as he alleges, Mr. Quezada did not produce evidence showing this was due to discriminatory animus.

The Court is aware that, in Washington, "[s]ummary judgment for an employer is seldom appropriate in employment discrimination cases because of the

difficulty of proving discriminatory motivation." *Mikkelsen*, 404 P.3d at 471.

"When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation." *Scrivener*, 334 P.3d at 545. The burden that the plaintiff in an employment discrimination must meet, then, is rather low: "the plaintiff needs to show only that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." *Mikkelsen*, 404 P.3d at 471.

Here, beyond mere conclusory allegations, Mr. Quezada does not provide evidence that the elimination of his position was either pre-textual, or that his race was a substantial factor in the elimination of his position. *See id.* While Mr. Quezada claims that Ms. Driver disliked him and got rid of him because of her agenda, no evidence presented by Mr. Quezada supports his conclusions. ECF No. 8 at 2. Mr. Quezada also does not contend that he applied for the new position that was created, but was not selected. Without any evidence that the City's reorganization plan which terminated Mr. Quezada's position was motivated by racial animus, Mr. Quezada's WLAD claim fails.

There is no evidence in the record that the City of Entiat eliminated Mr. Quezada's position because of racial animus or for any discriminatory reason. The Court finds no dispute of material fact on the issue of employment discrimination under WLAD. Therefore, the Court grants Defendants' summary judgment motion on Mr. Quezada's discrimination claims

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27

### 2. Breach of Contract

Mr. Quezada's amended complaint alleges a cause of action entitled "Breach of Contract / Specific Performance / Promissory Estoppel" against the City of Entiat. ECF No. 1-3.

It is unclear from Mr. Quezada's complaint what contract he alleges that the City breached. *See* ECF No. 1-3 at 3. In his response to Defendants' motion for summary judgment, Mr. Quezada claims that the contract involves fair working conditions or promises of job security or fair treatment. ECF No. 8 at 11-12. At oral argument, Mr. Quezada's counsel indicated that the breach of contract claim involved the broken promise of a pre-termination hearing.

Even in the employment context, contracts are defined by offer, acceptance, and consideration. *Storti v. Univ. of Wash.*, 330 P.3d 159, 163 (Wash. 2014). If a contract is found, the plaintiff must prove that the contract imposes a duty, the duty is breached, and the breach proximately causes plaintiff's damages. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 301 P.3d 500, 503 (Wash. Ct. App. 2013). To attach legal liability for breach of contract, the terms of the breached contract must be sufficiently definite. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). "In Washington an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time." *Roberts v. Atl. Richfield Co.*, 568 P.2d 764, 767 (Wash. 1977), *abrogated on other grounds by Mikkelsen*, 404 P.3d at 464.

Here, Mr. Quezada has not specifically defined the terms of the alleged contract between Mr. Quezada and the City. As to his employment with the city, absent proof of a contract for employment for a specific period of time, there is no breach of contract claim when the employee is terminated, because the employee is at-will. *Roberts*, 568 P.2d at 767. As to any claims of a contract created by the city's personnel policies, the policies themselves preclude any argument that they create a contract: "These policies are not intended to be a contract, express or implied, or any type of promise or guarantee of specific treatment upon which you may rely, or as a guarantee of employment for any specific duration." ECF No. 6-1 at 9.

While employers may be bound by the statements in their employment manuals, the manual will not create a contract when they "specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1088 (Wash. 1984). Here, because the City's personnel policies state in no uncertain terms that they do not constitute a contract, express or implied, its terms cannot be enforced against the City in a breach of contract claim. Finally, as explained above, Mr. Quezada was not entitled to a pre-termination hearing because he was still a probationary employee.

The Court finds that the City did not breach any contract with Mr. Quezada, and summary judgment is appropriate on those grounds.

**3. Specific Performance**

Within his breach of contract claims, Mr. Quezada asks the Court to enforce specific performance against the City. ECF No. 1-3 at 3. At oral argument, counsel indicated that Mr. Quezada was asking the Court to compel the City to uphold its end of the bargain, in that the City promised Mr. Quezada continued, permanent employment if he left his previous job to become the Park Supervisor.

Specific performance is an equitable remedy for breach of contract. *Hallauer v. Certain*, 575 P.2d 732, 737 (Wash. Ct. App. 1978). Here, specific performance is improper because, as stated above, no contract was breached in this case. Therefore, Mr. Quezada is not due any remedy. Thus, the Court grants summary judgment to the City on Mr. Quezada's claim for specific performance.

**4. Promissory Estoppel**

Mr. Quezada claims that, under the doctrine of promissory estoppel, Entiat made a promise to Mr. Quezada of continued employment and the opportunity to obtain certifications, and Mr. Quezada relied on that promise to his detriment by quitting his higher-paying job, and thus is entitled to damages. ECF No. 1-3 at 3; ECF No. 8 at 12. The City disputes that it made any sort of legally enforceable promise. ECF No. 5 at 17.

1    Promissory estoppel has five elements: "(1) [a] promise which (2) the

2    promisor should reasonably expect to cause the promisee to change his position and

3    (3) which does cause the promisee to change his position (4) justifiably relying upon

4    the promise, in such a manner that (5) injustice can be avoided only by enforcement

5    of the promise." *Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 442 (Wash. 1994)

6    (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 616 P.2d 644 (Wash. 1980)).

7    When an employee claims promissory estoppel following an at-will termination, the

8    promise involved must be clear and definite. *Havens*, 876 P.2d at 443.

9    Mr. Quezada claims that he detrimentally relied on the City's promise of long-

10   term employment, in which he could work towards obtaining the necessary

11   certifications for his job and better his city. ECF No. 8 at 12. When he took the job

12   at Entiat, he left his previous, higher-paying job, looking for a position with a more

13   secure future. *Id.* The specific promise that Mr. Quezada claims Entiat offered is

14   the promise of continued employment with the city. *Id.*; ECF No. 1-3 at 3.

15   Mr. Quezada's claim for promissory estoppel is similar to the plaintiff's claim

16   in *Havens*. In *Havens*, an employee claimed promissory estoppel when, upon being

17   hired, the employer stated that "they were looking forward to a long and prosperous

18   future together," and the employee indicated that he wanted to work for the

19   employer until his retirement. *Havens*, 876 P.2d at 444. The Supreme Court of

20   Washington found that such statements by employers "are consistent with the

21   general expectation present in any such negotiation: the employer was hoping for

1   and expecting a long-term, mutually satisfactory relationship." *Id.* Further, an

2   employee's own expectations "do not constitute a promise by the employer." *Id.*

3        Similar to *Havens*, Mr. Quezada relies on alleged promises of long-term,

4   continued employment with the City made when he was first hired. Such promises

5   cannot be considered promises upon which Mr. Quezada can rest a promissory

6   estoppel claim. Additionally, his own subjective expectations about the nature of the

7   employment relationship do not support the existence of a specific, enforceable

8   promise. Thus, his promissory estoppel claim fails.

9        Even if the promise of continued employment was enforceable under

10  promissory estoppel, Mr. Quezada's reliance on alleged promises of continued

11  performance would not be justifiable. Mr. Quezada's offer letter expressly stated

12  that the first six months of his employment was probationary. ECF No. 6-1 at 6.

13  The personnel policies state that a probationary employee can be fired at any time

14  without a pre-termination hearing. *Id.* at 42. While Mr. Quezada himself might

15  have believed he was guaranteed long-term employment, his offer letter and the

16  personnel policies prove otherwise. Thus, even if Mr. Quezada had believed that the

17  statements by Entiat were enforceable promises under promissory estoppel, Mr.

18  Quezada's reliance on those promises was not justifiable.

19       The Court finds that Mr. Quezada's promissory estoppel claim lacks merit and

20  grants Defendants' summary judgment motion on this claim.

21

### 5. Breach of Promise of Specific Treatment in Specific Circumstances

Mr. Quezada claims that the City made promises to him for specific treatment in specific circumstances, and subsequently breached that promise. ECF No. 1-3 at 3-4. Relying on *Thompson*, Mr. Quezada claims that the City's personnel policies made promises of continued, long-term employment and fair treatment in termination, and that the City subsequently breached the policies' promises. ECF No. 8 at 12-16. Entiat argues that the policies cannot support a claim for specific treatment in specific circumstances. ECF No. 11 at 8-10.

Specific treatment in specific circumstances is an employment contract claim that relies on an exception to the normal terminable at-will relationship between an employee and an employer. *Thompson*, 685 P.2d at 1089. When evaluating a breach of specific treatment in specific circumstances based on statements in an employee handbook, the court must consider "(1) whether any statements therein amounted to promises of specific treatment in specific situations; (2) if so, whether the employee justifiably relied on any of these promises; and, finally, (3) whether any promises of specific treatment were breached." *Bulman v. Safeway, Inc.*, 27 P.3d 1172, 1174-75 (Wash. 2001). While these elements are issues of fact, summary judgment is still appropriate if there is no dispute of material fact regarding the specific treatment promised. *See, e.g.*, *Swanson v. Liquid Air Corp.*, 826 P.2d 665, 669 (Wash. 1992) ("[I]f reasonable minds cannot differ as to whether language sufficiently constitutes an offer or a promise of specific treatment in specific

1  circumstances, as a matter of law the claimed promise cannot be part of the

2  employment relationship."). While the policies will be interpreted as a whole to

3  determine whether they make any sort of specific promises, *see Kohn v. Ga.-Pac.*

4  *Corp.*, 850 P.2d 517, 522 (Wash. Ct. App. 1993), the employer can disclaim what

5  otherwise might be enforceable promises with non-conspicuous language. *Swanson*,

6  826 P.2d at 672.

7  Here, Mr. Quezada cannot show that Entiat promised him specific treatment

8  in specific circumstances. First, there is no specific promise of continued

9  employment anywhere in the personnel policies. *See* ECF No. 6-1 at 8-44. In fact,

10  the policies expressly state that they do not create "a guarantee of employment for

11  any specific duration." *Id.* at 9. Second, as discussed above, Mr. Quezada was not

12  entitled to a pre-termination hearing because he was still a probationary employee

13  when his position was eliminated.

14  Even if the personnel policies could be interpreted as making specific

15  promises, the promises are not enforceable because the policies disclaim any

16  contract, express or implied, that they might create. ECF No. 6-1 at 9. The

17  disclaimer is conspicuous and clearly states that the policies do not create "any type

18  of promise or guarantee of specific treatment upon which [an employee] may rely."

19  *Id.* This disclaimer makes any alleged promise of specific treatment in the policies

20  unenforceable. *Swanson*, 826 P.2d at 672.

21

1    Mr. Quezada relies on *Kohn*, in which a Washington Appellate Court held that

2    an employee's employment status was a dispute of material fact. *Kohn*, 850 P.2d at

3    522. In *Kohn*, an employee sued her employer for breach of specific treatment in

4    specific circumstances after her position was eliminated while she was away on

5    medical leave, arguing that her employer promised to rehire her after her medical

6    leave was over. *Id.* at 520. Her employer argued that there was no breach because

7    the employee policies stated her position was at-will, meaning she could be fired at

8    any time and was not promised any kind of specific treatment. *Id.* at 522. While the

9    handbook did state the plaintiff's employment was at-will, the appellate court found

10   that the phrase was "merely one phrase among many statements purporting to

11   government employment termination and job elimination." *Id.* Thus, the employee

12   was allowed to argue a claim of breach of specific treatment in specific

13   circumstances notwithstanding the policies' statement that her employment was at-

14   will. *Id.*

15       *Kohn* is distinguishable from the present case. There is no suggestion that the

16   policies in *Kohn* contained the disclaimer that Entiat's policies have, expressly

17   stating that the policies do not make any promise of continued employment or

18   specific treatment. ECF No. 6-1 at 9. Even if Mr. Quezada could point to specific

19   statements guaranteeing future employment or a pre-termination hearing as a

20   probationary employee, the disclaimer in the policies in conspicuous language

21

defeats any claim he might have to specific treatment in specific circumstances. *Swanson*, 826 P.2d at 672.

The Court finds that there was no breach of an implied contract or specific promises, and grants the City's motion for summary judgment on Mr. Quezada's claim for breach of promise of specific treatment in specific circumstances.

**6. Wrongful Discharge in Violation of Public Policy Claim**

Lastly, Mr. Quezada claims that the City and Ms. Driver terminated Mr. Quezada's employment in violation of public policy. ECF No. 1-3 at 4. The basis of Mr. Quezada's claim is that race discrimination violates public policy, and in terminating Mr. Quezada's position on the basis of his race, Defendants violated Washington public policy. *Id.*; ECF No. 8 at 16-17. At oral argument, Mr. Quezada stated that his wrongful discharge in violation of public policy claim was intertwined with his WLAD claim. Defendants argue that this claim lacks merit. ECF No. 5 at 19.

Wrongful discharge in violation of public policy is an intentional tort. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 125 P.3d 119, 124-25 (Wash. 2005), *overruled on other grounds by Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139 (Wash. 2015). To prove the intentional tort, the plaintiff must show (1) the existence of a clear public policy; (2) discouraging the employee's conduct by termination would jeopardize public policy; (3) the public policy conduct caused the dismissal; and (4) the employer is unable to offer a different justification for the

dismissal. *Rose*, 358 P.3d at 1143. This tort action has only been allowed in four situations: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing." *Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 379 (Wash. 1996).

Mr. Quezada's claim for wrongful discharge in violation of public policy does not stand on one of the four grounds identified in *Gardner*. Instead, his claim rests on his assertion that he "was discharged for being Hispanic, in violation of Washington State Public Policy." ECF No. 8 at 17. Just as Mr. Quezada's racial discrimination claim cannot survive summary judgment, this claim also is unsupported by the evidence. First, as stated above, Mr. Quezada's claim under the WLAD failed as a matter of law. Second, Washington courts have not identified termination because of racial discrimination as a protectable public policy under the tort. *See Gardner*, 913 P.3d at 379.

Therefore, the Court grants summary judgment to Defendants on Mr. Quezada's claim of wrongful termination in violation of public policy.

/ / /

/ / /

/ / /

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 37

## CONCLUSION

None of Mr. Quezada's claims survives summary judgment. There is no dispute of material fact, and Defendants are entitled to summary judgment on all claims against them.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 5**, is **GRANTED.**

2. Plaintiff's claims are **DISMISSED with PREJUDICE**.

3. Judgment shall be entered in favor of **DEFENDANTS**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment in favor of Defendants, provide copies to counsel, and **close this case**.

**DATED** September 7, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
